[Cite as *Tomazic v. Rapoport*, 2012-Ohio-4402.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97937**

## JENNINE TOMAZIC

PLAINTIFF-APPELLEE

vs.

## ALAN J. RAPOPORT, TRUSTEE, ET AL.

DEFENDANTS-APPELLANTS

### JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 11 ADV 0173711

**BEFORE:** Keough, J., Rocco, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** September 27, 2012

**ATTORNEY FOR APPELLANT**

Lester S. Potash
55 Public Square
Suite 1717
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

Adam M. Fried
Adriann S. McGee
Reminger Co., L.P.A.
1400 Midland Building
101 Prospect Avenue West
Cleveland, OH 44115

KATHLEEN ANN KEOUGH, J.:

**{¶1}** Defendant-appellant Alan J. Rapoport, Trustee of the David Tomazic Trust (the "Trust"), appeals from the trial court's judgment that granted plaintiff-appellee Jennine Tomazic's motions for restraining order and preliminary injunction and to remove Rapoport as Trustee, and set aside Rapoport's termination of Jennine's interest in the Trust. We affirm.

## Background

**{¶2}** The record reflects that the trial court held hearings relating to the motions on January 11 and January 18, 2012. The record and the evidence adduced at those hearings demonstrates the following.

**{¶3}** On September 16, 2009, David Tomazic, while suffering from terminal lung cancer, executed a Last Will and Testament and entered into a Trust Agreement, drafted by Rapoport, with Rapoport serving as Trustee. The Trust Agreement provided a 60% benefit, with no residual beneficiary named, to David's daughter Jennine, and Jennine's children. Six days later, Rapoport went to the VA hospital, where David was receiving treatment, and David executed a new Last Will and Testament and modification to the September 16, 2009 Trust Agreement. The modification named David's nephew, Frank Tomazic, Jr., as a 10% beneficiary and Deborah Liberatore, David's ex-wife and Rapoport's client, as a 50% beneficiary of the Trust.

**{¶4}** It also contained the following distribution provision regarding Jennine:

When my daugher, JENNINE TOMAZIC, attains her age of thirty five (35)

years, my Trustee may at that time pay Sixty Percent (60%) of the entire amount then retained in trust to such beneficiary absolutely. Provided, however, that if in the sole and unlimited discretion of my Trustee, my said daughter is not of sufficiently sound mind and character on the date on which she has attained her age of thirty five (35) years, there shall be no distribution as to her of any kind thereafter and her interest in the trust shall permanently and completely terminate in the same manner as if she had died.

**{¶5}** After David's death in November 2009, Rapoport was appointed Executor of David's Estate and continued to serve as Trustee of the Trust. David's Estate, which poured over into the Trust, was valued at approximately $570,000, consisting of a house in Euclid, Ohio ("the Euclid property"), a house in Richfield, Ohio ("the Richfield property"), and other personal property.

**{¶6}** From November 2009 until September 2011, Rapoport administered the Trust partially for Jennine's benefit; he made several cash distributions from the Trust to Jennine and he also allowed her and her child to live rent-free in the Euclid property. However, he never provided to Jennine any accounting or information regarding the Trust administration, expenditures, income, or the status of her benefits pursuant to the distribution provision.

**{¶7}** On September 6, 2011, Rapoport sent Jennine a letter offering to distribute the Euclid property to her as her full distributive share under the Trust. In exchange, he demanded that she sign a release relieving him from all personal and fiduciary liability related to his management of the Trust.

**{¶8}** Rapoport testified that he did not know the value of the Euclid property when he offered it to Jennine as full satisfaction of the distribution owed to her.

**{¶9}** But after Jennine questioned Rapoport about the value of the Euclid property relative to her beneficial interest under the terms of the Trust, he reminded her that he had the power to evict her from the property and terminate her interest in the Trust.

**{¶10}** Jennine retained counsel and on November 15, 2011, filed suit against Rapoport. She sought (1) to set aside the trust modification; (2) a construction of the original Trust; (3) the removal of Rapoport as Trustee, and (4) an accounting. In response to the filing of the complaint, Rapoport again demanded that Jennine accept the Euclid property as settlement of her Trust distribution or face eviction and a mental health examination.

**{¶11}** After Jennine, through counsel, requested an accounting, Rapoport provided what he called a "guesstimate" accounting of the Trust administration. Jennine learned that Rapoport had approved expenditures of nearly $115,000 for repairs to the Richfield property, which was appraised at $195,000, and had sold it in October 2011 for $155,000, at a significant loss to the Trust. Jennine also learned that several companies that Rapoport had represented as an attorney had worked on the Richfield property. And she learned that Rapoport had paid himself a total of $29,975.77 in executor and trustee fees ($9,000 of which were paid in the two months prior to David's death) and was requesting $25,000 in additional trustee fees from the beneficiaries.

**{¶12}** Due to the information contained in the accounting and Rapoport's threats to evict her and terminate her interest in the Trust, Jennine filed a motion for a temporary restraining order and preliminary injunction to stop Rapoport from acting on his threats.

The court met with counsel when the motion was filed and declined to enter an emergency restraining order, based upon representations that Rapoport would take no action adverse to Jennine pending a full hearing on the motion on December 13, 2011.

{¶13} On that date, the parties again met with the trial court and agreed to avoid any action adverse to Jennine pending further discovery, time to plead, and a full hearing on the motion for restraining order and injunction that was rescheduled to January 11, 2012.

{¶14} Jennine, through counsel, issued subpoenas to the companies that had worked on the Richfield property but Rapoport intructed the recipients not to respond. On January 6, 2012, the day before the subpoenaed documents were due, Rapoport sent a letter to Jennine reminding her of the distribution provision in the Trust, and advising her that he had concluded that she was not of sufficient sound mind and character and that her interest in the Trust was terminated.[1]  That same day, Rapoport filed with the trial court a motion to dismiss Jennine's complaint for lack of standing.

{¶15} Jennine then filed an emergency motion to remove Rapoport as Trustee and for appointment of a disinterested third party to administer the Trust.  After two days of hearings, the trial court issued its judgment, finding that Rapoport had "committed a serious breach of trust."  The court found that Rapoport had "attempted to disqualify [Jennine] as a trust beneficiary to protect his own interests, and not in furtherance of the terms of the Trust."  Accordingly, the court granted Jennine's emergency motion to

---

[1]Jennine turned 35 on December 9, 2011.

remove Rapoport as Trustee, and it set aside his termination of Jennine's interest in the Trust. The court also granted Jennine's motion for restraining order and preliminary injunction and ordered that no action to remove Jennine from the Euclid property be taken without further order of the court. Rapoport appeals from this order.

**Analysis**

**A.  Standing**

{¶16} In his first assignment of error, Rapoport contends that although Jennine was a beneficiary of the Trust when she filed her complaint in November 2011, upon his termination of her interest in the Trust on January 6, 2012, she was no longer a beneficiary of the Trust and therefore lacked standing to maintain her action. Accordingly, he contends that the trial court should have dismissed her action before the hearing on her motions for temporary restraining order and to remove him as trustee. Rapoport's argument is without merit.

{¶17} As discussed above, Rapoport filed his motion to dismiss for lack of standing on January 6, 2012. On January 11, 2012, before the hearing on Jennine's motions commenced, Rapoport asked the court to grant his motion. However, pursuant to Loc.R. 40.1(C) of the Court of Common Pleas of Cuyahoga County, Probate Division, which provides that a party opposing a motion shall serve and file a response within seven days after a motion is served and filed, Jennine's response to Rapoport's motion was not yet due. Therefore, a ruling on the motion would have been premature.

{¶18} Furthermore, R.C. 5807.06(A) provides that the settlor, a cotrustee, or a

beneficiary may request the court to remove a trustee. It further provides that "the court may remove a trustee on its own initiative" if it finds that "[t]he trustee has committed a serious breach of trust." Thus, even assuming for the sake of argument that Jennine had no standing to seek Rapoport's removal as Trustee when the hearing commenced, the court on its own initiative had jurisdiction to hear evidence relating to Rapoport's administration of the Trust.

{¶19} It did so, and concluded that Rapoport had indeed committed a serious breach of trust. Accordingly, pursuant to R.C. 5810.01, which provides that a court may remove a trustee and void the trustee's actions to remedy a breach of trust, the court removed Rapoport as Trustee and voided his action terminating Jennine's beneficiary interest in the trust. Because the court voided Rapoport's action, his termination of Jennine's interest was a legal nullity and, consequently, she never lacked standing to pursue her claims against him. The first assignment of error is overruled.

## B. "Sole and Unlimited" Discretion

{¶20} In his second assignment of error, Rapoport contends that the trial court abused its discretion by improperly substituting its opinion about Jennine's soundness of mind and character for his opinion. He argues that David established a "wholly discretionary" trust and granted him "sole and unlimited" discretion to act. Therefore, he contends, the trial court had no legal basis on which to substitute its judgment for his and void his termination of Jennine's beneficiary interest in the Trust. This argument also fails.

{¶21} First, the Trust is not a "wholly discretionary" trust. Under R.C. 5801.01(Y)(1), a trust is a "wholly discretionary trust" if (1) the trust is irrevocable; (2) distributions of income or principal from the trust may or shall be made for the benefit of the beneficiary only at the trustee's discretion; (3) the benficiary does not have a power of withdrawal from the trust; (4) the terms of the trust use the words sole, absolute, uncontrolled, or similar language to describe the trustee's discretion to make distributions; (5) the terms of the trust do not provide any standards to guide the trustee in exercising his discretion; (6) the beneficiary is not the settlor, trustee, or a cotrustee; and (7) the beneficiary does not have the power to become the trustee or a cotrustee.

{¶22} Here, the Trust provides that Jennine is entitled to her distributive share at age 35, unless she "is not of sufficiently sound mind and character on the date on which she has attained her age of thirty five (35) years." In that event, the Trust provides that there shall be no distribution to Jennine and her beneficiary interest shall terminate. Hence, the language of the Trust provides a standard to guide the Trustee in determining whether Jennine is entitled to her distribution — whether she is of sound mind and character — and, accordingly, the Trust does not meet the criteria set forth in R.C. 5801.01(Y) to be a "wholly discretionary trust."

{¶23} Moreover, despite Rapoport's arguments to the contrary, in Ohio, even a grant of absolute discretion will be controlled by the court if the trustee acts in bad faith, dishonestly, or with an improper motive. As the court stated in *In re Estate of Ternansky*, 141 N.E.2d 189, 1957 Ohio App. LEXIS 1088 (9th Dist.1957):

> Courts are not powerless to enforce this trust. Trustees must always act in good faith and always act fairly and reasonably, and a court of equity will and can require such behaviour. Where a trustee is given uncontrolled discretion, as here, he acts much as a judicial officer and is duty bound to exercise sound discretion under the circumstances. A court of equity will not tolerate abuse of sound discretion * * *.

*See also Pack v. Osborn*, 117 Ohio St.3d 14, 2008-Ohio-90, 881 N.E.2d 237, ¶ 18.

**{¶24}** Despite Rapoport's argument otherwise, the trial court did not substitute its judgment for his determination that Jennine was not of sound mind and character when she turned 35. Rather, it found that Rapoport's purported finding that she was not of sound mind and character and his action in terminating her beneficiary interest in the Trust were made with an improper motive; i.e., to protect his own interests.

**{¶25}** The trial court found that Rapoport had offered Jennine the Euclid property in September 2011, and took steps to deem her unqualified to receive any distribution only after she questioned the proposed distribution and Rapoport's administration of the Trust. Further, the trial court found that Rapoport's disqualification of Jennine's beneficiary interest occurred a few days before a scheduled hearing on her motions to remove him as Trustee and for a restraining order, despite assurances of counsel that Rapoport would do nothing to affect Jennine's rights under the Trust pending the hearing. In light of these findings, the trial court concluded that there was "no valid explanation, other than self-interest, for [Rapoport's] actions." The court stated: "The Defendant/Trustee has attempted to disqualify Plaintiff as a trust beneficiary to protect his own interests, and not in furtherance of the terms of the Trust."

**{¶26}** Although Rapoport argues that the trial court interfered with David's grant

of wholly discretionary power to him when it voided his action terminating Jennine's interest, the trial court's judgment entry is clear that its decision to void Rapaport's action terminating Jennine's interest was to remedy Rapoport's abuse of his fiduciary powers. The trial court expressed no opinion regarding Jennine's mind and character or the validity of her interest under the Trust, other than to note that there was no evidence that Jennine's character had changed in any way between Rapoport's attempt in September 2011 to make a distribution to her and his termination of her interest in January 2012, and that there was no valid explanation for Rapoport's action other than his own self- interest. Moreover, the issue before the court was not the soundness of Jennine's mind or her character; the issue was whether Rapoport should be removed as Trustee because he had acted in bad faith or with an improper motive. Accordingly, this argument is without merit.

**{¶27}** Within the second assignment of error, Rapoport also contends that the trial court erred in excluding as hearsay his testimony as to what certain individuals told him about Jennine during his investigation of whether she was of sound mind and character. Rapoport argues that the testimony was not hearsay because it was not offered for its truth but to demonstrate what investigation he undertook to determine Jennine's character. Alternatively, he contends that the evidence was admissible to demonstrate that Jennine was not of sound mind and character, which he asserts was the issue before the court at the hearing.

**{¶28}** Generally, hearsay — an out-of-court statement offered by another to prove

the truth of the matter asserted — is inadmissible at trial unless provided for by the Rules of Evidence. Evid.R. 801 and 802. The admission of evidence is generally within the discretion of the trial court, and a reviewing court may reverse only upon a showing of an abuse of that discretion. *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 25. We find no abuse of discretion here.

{¶29} The statements were not offered to demonstrate what steps Rapoport took to investigate Jennine's mind and character; the record reflects that the trial court allowed testimony regarding who he spoke to and what he did during his investigation. Instead, Rapoport offered the statements about what others told him about Jennine to demonstrate that she was not of sound mind and character. Thus, the statements were offered for the truth of the matter asserted and were indeed hearsay. The trial court correctly determined that Rapoport could call the individuals he spoke with to testify about what they told him, but that he could not testify about their purported statements to him about Jennine's character.

{¶30} Moreover, even if we were to find that the trial court improperly excluded the testimony, we would find no prejudicial error because the overwhelming evidence in the record demonstrates that Rapoport's motivation for terminating Jennine's beneficiary interest was not her mind or character but his self-preservation. Specifically, when the trial judge asked him what prompted him to write the letter dated January 6, 2012 terminating Jennine's interest, he admitted that he terminated Jennine's interest that day because it would deprive her of standing necessary to maintain her claims against him.

**{¶31}** The second assignment of error is therefore overruled.

## C. Removal of the Trustee

**{¶32}** In his third assignment of error, Rapoport acknowledges that under the Ohio Trust Code, which governs this case, a court may remove a trustee where the trustee has committed a serious breach of trust. R.C. 5807.06(B). He contends, however, that the trial court erred in removing him as Trustee because there was not clear and convincing evidence that he had committed such a breach.

**{¶33}** The removal of a trustee is generally considered a drastic action and the party seeking to remove a trustee must show a basis for removal by clear and convincing evidence. *Diemert v. Diemert*, 8th Dist. No. 82597, 2003-Ohio-6496, ¶ 15-16. Further, "[t]he greater the grant of discretion by the settlor to the trustee, the broader the range of permissible conduct by the trustee in exercising it." R.C. 5808.14(A).

**{¶34}** Despite David's grant of "sole and unlimited" discretion to Rapoport, the record in this case reflects numerous instances of Rapoport's abuse of his fiduciary duties that support the trial court's finding that he committed a serious breach of trust. The evidence demonstrated that he approved expenditures of over $115,000 on a property that eventually sold for a loss; hired companies with which he had either a personal or attorney – client relationship to work on the property and later advised those companies not to respond to subpoenas issued by counsel for Jennine; never provided an accounting of Trust expenditures to any of the beneficiaries and pursuant to a request for an accounting, provided only a "guesstimate" of his Trust administration; presented a

proposal regarding the Euclid property to Jennine without knowing the value of the property and conditioned upon her executing a release of his liability regarding his administration of the Trust; and threatened Jennine with eviction and a mental examination if she did not accept his proposal.

**{¶35}** But most significantly, the evidence demonstrated that Rapoport attempted to disqualify Jennine as a Trust beneficiary in order to deprive her of standing to proceed with her lawsuit against him, and despite counsel's representations to the court that Rapoport would take no action adverse to Jennine pending a full hearing on her motions. In short, Rapoport attempted to disqualify Jennine as a Trust beneficiary to protect his own interests, and not in furtherance of the terms of the Trust.

**{¶36}** On this record, which clearly and convincingly demonstrated that Rapoport committed a serious breach of trust, the trial court did not err in removing him as Trustee. The third assignment of error is therefore overruled.

**{¶37}** Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

KENNETH A. ROCCO, P.J., and
MARY EILEEN KILBANE, J., CONCUR